## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | | |
|---|---|---|
| C.S., | ) | |
| Plaintiff, | ) | **Case No:** |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| INN OF NAPLES HOTEL, LLC AND INN OF NAPLES, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff C.S., by and through her undersigned attorneys, hereby files this Complaint[1] against INN OF NAPLES HOTEL, LLC and INN OF NAPLES, LLC (collectively "Inn of Naples Defendants"), and alleges as follows:

## INTRODUCTION

1.     This action for damages is brought by the Plaintiff, C.S., a survivor of sex trafficking, under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA"),  as well as other Florida state laws as identified herein.

2.     The Inn of Naples Defendants are hotel owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for hotels at which sex trafficking has taken place, including the Inn of Naples where Plaintiff C.S. was trafficked, and at all material times, each and every Inn of Naples Defendant was doing business as the Inn of Naples.

---

[1] This Complaint is being filed based upon the Order of the Honorable Judge John E. Steele entered on August 5, 2020 in the matter of *C.S.,et al. v. INN OF NAPLES HOTEL, LLC, et al*, 2:20-cv-00118-JES-MRM, pp. 13-14, 17.

3.     Human sex trafficking is prevalent at hotels and motels throughout the United States and globally due to many factors, including but not limited to, ease of access for buyers, the ability to pay in cash (non-traceability), the ability to maintain anonymity, privacy and discretion.

4.     At all material times, each and every Inn of Naples Defendant had knowledge of the prevalence of sexual trafficking at hotels and motels throughout the United States and globally, including the factors identified in the preceding paragraphs, yet each and every Inn of Naples Defendant failed to prevent and/or take steps to prevent this horrific criminal conduct from occurring at their hotels, including the Inn of Naples, so that each and every one of them could continue earning a profit at the expense of human life, human rights, and human dignity.

5.     As part of their knowledge of sex trafficking, each and every Inn of Naples Defendant knew or should have known that sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will at these hotels and motels.

6.     Plaintiff C.S.'s sex traffickers, or 'pimps', chose the Inn of Naples as a  venue to conduct their sex trafficking activities.

7.     The passage of the TVPRA in 2008 (hereinafter "TVPRA"), as well as countless other legislative initiatives, put the Inn of Naples Defendants on notice of the high likelihood of these illegal acts occurring on their hotel premises, including the premises of the Inn of Naples, which, at a minimum, warranted them to be all the more vigilant and proactive in preventing this conduct.

8.     Each and every Inn of Naples Defendant, who were the owners, operators, managers and/or controllers of the Inn of Naples, knew or should have known, based on a combination of well-documented indicators, that sex trafficking and other criminal activity was occurring, and would continue to occur, at the Inn of Naples as a result of their respective misfeasance and nonfeasance.

9.      At all material times, each and every Inn of Naples Defendant, individually and/or by their respective actual or apparent agents, operators, servants and/or employees, aided, concealed, confined, benefitted and profited from sex trafficking and other criminal activity that was occurring at the Inn of Naples, including as to Plaintiff C.S.

10.     At all material times, each and every Inn of Naples Defendant, individually and/or by their respective actual or apparent agents, operators, servants, and/or employees, harbored human traffickers at the Inn of Naples and/or failed to rectify the foreseeable risks of sex trafficking and other criminal activity that were occurring and would continue to occur at the Inn of Naples.

11.     At all material times, each and every Inn of Naples Defendant, individually and/or by their respective actual or apparent agents, operators, servants, and/or employees, failed to take steps to prevent dangerous conditions from existing at the Inn of Naples, failed to ensure the Inn of Naples was safe and secure from criminal conduct and failed to report suspicious conduct, such as human sex trafficking, at the Inn of Naples.

12.     As a result of each and every one of the Inn of Naples Defendant's failure to act and their negligent operations as outlined in the Complaint, each and every Inn of Naples Defendant allowed the Inn of Naples to be a vehicle for carrying out human trafficking, sex crimes and/or other unlawful conduct.

13.     While each and every Inn of Naples Defendant profited from the room occupancy at the Inn of Naples, which included rental fees, increased property value, food and beverage sales on site and/or ATM fees, Plaintiff C.S. was being exposed to continuous and repeated dangerous conditions at the Inn of Naples as a sex slave that resulted in her confinement, bodily injuries, emotional distress, mental harm and anguish from approximately 2015 and continuing through approximately February of 2016.

14.     Before and during this period from 2015 to 2016, each and every Inn of Naples Defendant was on notice of the prevalence of sex trafficking at the Inn of Naples as well as at similarly situated hotels within Naples, Florida, and each and every Inn of Naples Defendant failed to take adequate steps that would have prevented its occurrence.

15.     Before and during this period from 2015 to 2016, each and every Inn of Naples Defendant failed to implement sufficient educational and training programs on sex trafficking within their respective corporate chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the Inn of Naples.

16.     Before  and during this period from 2015 to 2016, each and every Inn of Naples Defendant knew or should have known that Plaintiff C.S. was being trafficked at the Inn of Naples and each and every Inn of Naples Defendant failed to act upon the obvious signs alerting them to the crimes taking place at the Inn of Naples.

17.     Plaintiff C.S. brings this action for damages against each and every Inn of Naples Defendant named herein.  Each of the Inn of Naples Defendants, in violation of the TVPRA, knowingly benefited from a venture that they knew, or should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a) and (b), and who enabled, harbored, facilitated or financially benefited, or any combination of the foregoing, from a sex trafficking venture in which Plaintiff C.S. was trafficked for sex, sexually exploited, and victimized in violation of the TVPRA.

18.     As a direct and proximate result of each and every Inn of Naples Defendant's willful blindness, negligence, facilitation, misfeasance, nonfeasance and/or consistent refusals to prevent human trafficking at the Inn of Naples, the Plaintiff C.S. was drugged, starved, choked, beaten, sex trafficked, sexually exploited, physically abused, mentally abused, and victimized repeatedly

at the Inn of Naples and other hotels, in violation of the aforementioned statutes as well as Florida

state law.

19.     This action is also for violation of Florida's RICO laws, premises liability, negligent

hiring, supervision and retention, negligent rescue, and aiding and abetting underlying

wrongdoing.

## JURISDICTION AND VENUE

20.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331

because this action arises under the Constitution, laws, or treaties of the United States and this

Court has supplemental jurisdiction over Plaintiff's claims that do not arise under federal law

because each claim is "so related to claims in the action within [this Court's] original jurisdiction

that they form part of the same controversy under Article III of the United States Constitution." 28

U.S.C. § 1367(a).

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of

the events or omissions giving rise to the claims asserted in this action occurred in the judicial

district where this action was brought.

## PARTIES

22.     At all times material to this complaint, Plaintiff C.S. was a resident of Collier County,

Florida.

23.     Plaintiff C.S. is a "victim" of sex trafficking as protected under applicable provisions of

the TVPRA.

24.     Plaintiff  C.S. was sex trafficked at the Inn of Naples located at 4055 Tamiami Trail N,

Naples, Florida 34103 between 2015 and 2016.

25.     Defendants Inn of Naples Hotel, LLC and Inn of Naples, LLC are both Florida limited liability corporations and both with a principal address of 4055 Tamiami Trail N, Naples, Florida 34103.

26.     At all times material to this complaint, Defendant Inn of Naples Hotel, LLC (fee simple owner per the deed) and Inn of Naples, LLC, were doing business as the Inn of Naples in Naples, Florida and, upon information and belief were authorized to do, licensed to do, and doing business in the State of Florida offering the Inn of Naples as a place of public lodging.

27.     At all times material to this complaint, Defendant Inn of Naples Hotel, LLC (fee simple owner per the deed) and Inn of Naples, LLC were, at all times, by and through their agents, servants, and/or employees, the owners, operators, managers, supervisors, controllers and innkeepers of a hotel, namely the Inn of Naples, located at 4055 Tamiami Trail N, Naples, Florida 34103.

## SEX TRAFFICKING UNDER FEDERAL LAW

28.     Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion or in which the person induced to perform such act has not attained 18 years of age." This definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

29.     Sex trafficking ventures are prohibited by federal criminal law. Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590.  The crime of slavery can be divided into two elements: the act and the means. The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a

violation of 18 U.S.C. §1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

30.     Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

31.     Pursuant to 18 U.S.C. §1591(a) and (b), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion *or* from a person under the age of 18 years old are guilty of sex trafficking.  This includes, at a minimum, **_both_** the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work **_and_** the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

<u>STATEMENT OF FACTS</u>

**Defendants' Duty Of Care To Patrons**

32.     Chapter 509 of the Florida Statutes imposes legal responsibilities upon hotels, like those owned and operated by each and every Inn of Naples Defendant herein, to take action to protect people. In Florida, hotels are "innkeepers" and owe patrons a special duty of care.

33.     The Inn of Naples is a public lodging establishment pursuant to Chapter  509 of the Florida Statutes.

34.     Each and every named Inn of Naples Defendant owns, operates, manages, supervises, controls and/or is otherwise responsible for the Inn of Naples for the purpose of making a profit.

35.      The premises of the Inn of Naples includes a common space and private rooms as well as a parking lot that abuts to a sidewalk and/or land, and, at all material times, each and every Inn of Naples Defendant had possession, custody, or control of these common spaces, private rooms,

parking lots and any sidewalk and/or land abutting thereto as it applies to their business of providing public lodging at the Inn of Naples.[2]

36.    The Inn of Naples abuts to pathways, parking lots and/or driveways, and each and every Inn of Naples Defendant was or should have been aware that these neighboring parking lots, pathways and/or other driveways were being used by their patrons to traverse to and from the Inn of Naples, thereby expanding the zone where the Inn of Naples Defendants were to have prevented foreseeable risks of injury to the Plaintiff C.S.[3]

37.    Aside from their special duty to patrons and guests at the Inn of Naples, such as Plaintiff C.S., at all material times, each and every Inn of Naples Defendant had one of the highest obligations to protect their guests from known or anticipated dangers, which includes sex trafficking and illegal enterprises.

38.    At all relevant times, the Inn of Naples Defendants were aware of and/or should have been aware of their roles and responsibility in human sex trafficking.

**The Inn of Naples Defendants' Knowledge of The Prevalence of Sex Trafficking at Hotels and Their Participation in the Sex Trafficking Industry**

39.    Each and every Inn of Naples Defendant, as owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for hotels, including the Inn of Naples, have long profited from the reputations of hotels, including the Inn of Naples, as havens of privacy and discretion for the offending, including the criminals that trafficked Plaintiff C.S.

---

[2] If customers or clients are invited to use a convenient parking lot then the business owner may be liable for injuries they sustain on that lot even if it is not technically within the business' property line. *See Gutierrez v. Dade County School Bd*., 604 So. 2d 852, 77 Ed. Law Rep. 1052 (Fla. 3d DCA 1992).

[3] *Borda v. East Coast Entertainment, Inc*., 950 So. 2d 488 (Fla. 4th DCA 2007).

40.     At all  material times, each and every Inn of Naples Defendant, as owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for hotels, including the Inn of Naples, knew or should have known that their hotels, including the Inn of Naples, offered anonymity and non-traceability, making them ideal venues for crime, drugs and sex trafficking in particular.

41.     At all  material times, each and every Inn of Naples Defendant, as owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for hotels, including the Inn of Naples, knew or should have known that hotels are the top-reported venue where sex trafficking acts occur and that traffickers were using their hotels,  including the  Inn of Naples, as hubs for their sexual trafficking operations.

42.     At all  material times, each and every Inn of Naples Defendant, as owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for hotels, including the Inn of Naples, knew or should have known that traffickers were harboring, raping and assaulting victims at their hotels, including the Inn of Naples, and were forcing them to engage in "in call" services, wherein buyers ("Johns") would come to the hotels solely to purchase sex from these victims, as well as "out  call" services, wherein the buyer would rent a hotel room and the trafficker would deliver the victim to the buyer's room to complete the sordid transaction.

43.     At all material times, each and every Inn of Naples Defendant, individually and/or by and  through  their  actual  or  apparent  agents,  servants  and/or  employees,  witnessed manifestations of sex trafficking and commercial exploitation  taking place  at their hotels, including the Inn of Naples, through various indicators that traffickers and their victims exhibit during their stay at their hotels, including the Inn of Naples.

44.     At all material times, each and every Inn of Naples Defendant, was on notice of repeated incidences of sex trafficking occurring on their hotel premises, including the Inn of Naples, yet they failed to take the necessary actions to prevent sex trafficking from taking place.

45.     At all material times, each and every Inn of Naples Defendant knew or should have known that pimps and sex traffickers used their hotel, including the Inn of Naples, to facilitate the trafficking of women for sex.

46.     Each and every Inn of Naples Defendant had the ability and the greatest reach to prevent, identify and thwart sexual exploitation at their hotels, including the Inn of Naples.

47.     Multiple statutes and initiatives starting in 1997, have informed, mandated, called for, and suggested hotel owners, operators, managers,  supervisors, controllers and/or staff, including the Inn of Naples Defendants, to implement effective safeguards to mitigate the risk that human trafficking will occur at or involve their premises and personnel.

48.     Prior to  the trafficking of Plaintiff C.S., voluminous data, step-by-step solutions and well-researched manuals published by anti-trafficking groups were available to each and every Inn of Naples Defendant, individually and/or through  their  actual  or  apparent  agents,  servants, employees and/or staff in every position, to help them identify the signs of human sex trafficking and stop it.

49.     At all material times, each  and every Inn of Naples Defendant had a legally imposed duty to ensure that their hotel properties, including the Inn of Naples, had taken all appropriate measures to prevent sex trafficking, and/or to timely implement reasonable policies, training, education and security measures to prevent sex trafficking.

50.     At all material times, the agents and/or employees of each and every Inn of Naples Defendant were  uniquely  situated  to  identify  and  report  suspicious  activity  on  their  hotel

properties, including the Inn of Naples, because from check-in to check-out there were numerous indicators that the traffickers and the adults and children who were being victimized by sex trafficking exhibited during their stay at their hotels, including the Inn of Naples.

51.     Had each and every Inn of Naples Defendant properly trained their agents and/or employees and/or implemented an anti-human trafficking protocol throughout their hotels and/or provided other reasonable security measures, they could have prevented the trafficking of persons on their hotel properties, including the Inn of Naples.

52.     Signs of sex trafficking at a hotel, and signs which were occurring at each and every Inn of Naples Defendant's hotels,  including  the Inn of Naples,  include, but are not limited to, the following: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, renting two rooms next door to each other, declining housekeeping service for several consecutive days, significant foot traffic in and out of rooms, men traveling with multiple unrelated women, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.

53.     Each and  every Inn of Naples Defendant, individually and by and through their actual or apparent agents, servants, employees and/or staff, were aware of and/or should have been aware of a number of warning signs at their hotels, including the  Inn of Naples, that indicated the presence of human trafficking, including but not limited to:

        a.  persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

        b.  persons lacking freedom of movement or being constantly monitored;

        c.  persons having no control over or possession of money or ID;

        d.  persons dressing inappropriately for their age or having lower quality clothing compared to others in their party;

e.  persons requesting room or housekeeping services (additional towels, new linens, etc.), but denying hotel staff entry into the room;

f.  the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g.  persons extending stay with few or no personal possessions in the room;

h.  excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion);

i.  the same person reserving multiple rooms;

j.  a room being rented hourly, less than a day, or for an atypical extended stay;

k.  attempts  of persons to sell items to or beg from patrons or staff;

l.  cars in the parking lot regularly parked backward, so the license plates are not visible;

m.  loitering and solicitation of male patrons;

n.  individuals waiting at a table or bar and then being picked up by a male (trafficker or customer);

o.  persons asking staff or patrons for food or money; and

p.  persons taking cash or receipts left on tables.

54.   Had each and every Inn of Naples Defendant educated and/or trained their actual or apparent agents, servants, employees and/or staff regarding human trafficking and their warning signs, their actual or apparent agents, servants, employees and/or staff would have more aware of human trafficking taking place at their hotels, including the Inn of Naples, and could have, at best, prevented it from happening or, at worst, been more willing to report it when it happened.

55.   Each and  every Inn of Naples Defendant could have and should have adopted policies and procedures related to human trafficking and made anti-human trafficking resources readily available to their actual or apparent agents, servants, employees and/or staff, but they did not.

56.     Each and  every Inn of Naples Defendant could have and should have mandated that all of their actual  or  apparent  agents,  servants,  employees  and/or  staff  complete  anti-human trafficking training, but they did  not.

57.     Each and  every Inn of Naples Defendant could have and should have encouraged all of their actual or apparent agents, servants, employees and/or staff to report suspected incidents of human trafficking when observed on their hotel properties, including the Inn of Naples, but they did  not.

58.     Each and  every Inn of Naples Defendant could have and should have developed and maintained relationships with law enforcement regarding appropriate and timely responses to suspected incidents of human trafficking on their hotel properties, including the Inn of Naples, but they did  not.

59.     Each and  every Inn of Naples Defendant could have and  should  have posted anti-human trafficking awareness and informational materials in common areas and guest rooms at their hotels, including the Inn of Naples, to help eliminate human trafficking, but they did not.

60.     Each and  every Inn of Naples Defendant could have and should  have developed and maintained  relationships  with  non-profit  service  providers  in  the  field  of  appropriate  human trafficking prevention training for hotel staff, but they did not.

61.     Each and every Inn of Naples Defendant failed to take effective preventative measure at their hotels, including the Inn of Naples, in spite of the indicia of human trafficking and effective preventative measures being widely known and available to them; they simply elected not to engage in preventative policies and practices.

62.     The motivation behind each and every Inn of Naples Defendant's ongoing willful blindness and ongoing failure to act is plain and simple – limitless corporate greed; each and every Inn of

Naples Defendant ignored all of the signs of and/or solutions to human trafficking out of an unfettered fealty to their profit margins and a corresponding complete disregard for the value of human life.

63.     By repeatedly failing to heed the call or repeatedly failing to execute their own policies, each and every Inn of Naples Defendant facilitated the sexual trafficking crimes at their hotels, including the Inn of Naples, content to direct their efforts solely to profit and the bottom line.

64.     Had each and every Inn of Naples Defendant implemented anti-human trafficking measures at their hotels, including the Inn of Naples, this would have been in conflict with their revenue objective which was constant and full hotel  occupancy.

65.     Upon information and belief, each and every Inn of Naples Defendant, individually and/or through their agents, lobbied through local, state and federal government levels against anti-human trafficking policies.

66.     Due to each and every Inn of Naples Defendant's failure to act, each and every Inn of Naples Defendant facilitated and enabled sex traffickers to use their hotels for sex trafficking, including the Inn of Naples, and traffickers and "Johns" continue to capitalize on each and every Inn of Naples Defendant's failure to timely and effectively act.

67.     Each and every Inn of Naples Defendant's failure to prevent and stop sex trafficking and sexual exploitation at their hotels, including the Inn of Naples, effectively makes them accountable to victims of sex trafficking, including the Plaintiff C.S.

**The Sex Trafficking of Plaintiff C.S. at the Inn of Naples**

68.     From approximately 2013 through February 2016, Plaintiff C.S. was recruited to, enticed to, solicited to, held at, harbored as captive at and/or transported to various hotels in Naples, Florida by her sex traffickers to engage in commercial sex acts at these hotels on a

regular, consistent and/or repeated basis, and from approximately 2015 to 2016, Plaintiff C.S. was trafficked by Gregory Hines (aka Bowlegs), Keith Lewis, and others at the Inn of Naples.

69.     During the relevant time period, sex trafficking activities and drug use were conducted in the open at the Inn of Naples.

70.     Hotel staff, guests, police, and EMS all observed Plaintiff C.S. numerous times in common areas and eating areas of the Inn of Naples in apparent distress, half naked, bleeding, overdosed, crying and in clear need of help. At no time did staff at the Inn of Naples take appropriate action to report what they saw and save Plaintiff C.S. from her traffickers.

71.     At all times material to this Complaint, each and every Inn of Naples Defendant, individually and/or by and through their actual or apparent agents, servants and/or employees, regularly rented or otherwise provided, for their own benefit, rooms and services at the Inn of Naples to Plaintiff C.S.'s sex traffickers.

72.     At all times material to this Complaint, each and every Inn of Naples Defendant received monetary payment for the rental of rooms at the Inn of Naples Defendant, including the rooms where Plaintiff  C.S. was being trafficked.

73.     The Plaintiff C.S. was forced to engage in sexual activities within and on the premises of the Inn of Naples that was at all relevant times owned, operated, managed, supervised, controlled and/or otherwise held responsible by each and every Inn of Naples Defendants.

74.     Upon information and belief, each and every Inn of Naples Defendant's agents and employees made promises to the Plaintiff's sex traffickers to not interfere with the Plaintiff C.S. who was a victim of human sex trafficking and slavery.

75.     The human sex trafficking enterprise, specifically as to how it was applied to Plaintiff C.S., was run out of the Inn of Naples as follows:

a. Plaintiff's sex traffickers put up internet advertisements for the purpose of prostituting the Plaintiff. Said advertisements would include a phone number, which would ring to their cell telephone. During the telephone call, sex for cash was negotiated and the caller "John" would be informed that the Plaintiff was at one of the hotels identified in the Complaint.

b. The caller "John" who negotiated for the Plaintiff's sex services would then appear on the hotel premises and either the Plaintiff would meet the "John" in the lobby to escort the "John" to the hotel room, or the "John" would speak to the staff at the hotels to inquire about the Plaintiff's room number or otherwise be directed to the Plaintiff's room.

c. While the Plaintiff C.S. performed sex acts with the "John" in the room, the Plaintiff's sex traffickers would linger in the halls and on the premises of the hotel;

d. The "John" paid the Plaintiff in cash in exchange for the commercial sex acts received in the hotel room. Plaintiff gave the cash received for the commercial sex acts to her trafficker.

e. In turn, the Plaintiff C.S.'s sex traffickers, used said cash as payment for the hotel rooms where commercial sex acts continued to take place, thereby benefitting the occupancy rates and each and every Inn of Naples Defendant financially.

f. The Plaintiff's sex traffickers also engaged in the commercial sale of illegal drugs on the hotel premises with sales taking place either in the hotel rooms or in public areas of the hotels.

76.     Plaintiff C.S. performed numerous commercial sex acts ("dates") per day while at the  Inn of Naples between 2015 and 2016.  As such, the routine identified in the preceding paragraph occurred on the hotel premises numerous times within a 24-hour window.

77.     Upon information and belief, some of the "Johns" visiting the Plaintiff while on the premises of the Inn of Naples, were staff, agents and/or employees of the Inn of Naples Defendants.

78.     Upon information and belief, during the time period Plaintiff C.S. was trafficked at the Inn of Naples, the traffickers and "Johns" used the ATM in the lobby on a frequent basis.

79.     While being trafficked at the Inn of Naples, Plaintiff C.S.'s room was frequented by many men on a daily basis and was always littered with drugs and drug paraphernalia.

80.     Plaintiff C.S.'s sex traffickers, individually and through the Plaintiff and other agents, conducted multiple illegal drug sales throughout the day at the Inn of Naples in adjoining rooms.

81.     Upon information and belief, while at the Inn of Naples, Plaintiff C.S. was forced to engage in frequent use of illegal hard drugs and would exhibit behavior consistent with someone who was under the influence, or near overdose, of a chemical substance.

82.     The following was also routine conduct taking place at the Inn of Naples as a result of the human sex trafficking enterprise:

    a.  Plaintiff's sex traffickers frequently rented rooms at the hotel close to each other;

    b.  Plaintiff's sex traffickers paid cash for the rooms at the Inn of Naples where the Plaintiff engaged in commercial sex acts;

    c.  Plaintiff's sex traffickers booked extended stays at the Inn of Naples for themselves and for the Plaintiff on a routine basis and on a rotating basis frequently throughout the year;

    d.  Plaintiff and her sex traffickers would have few or no luggage or personal possessions for these extended stays;

    e.  Plaintiff was confined in the rooms at the Inn of Naples for long periods of time;

    f.  Plaintiff's rooms and her sex traffickers' rooms consistently displayed "Do Not Disturb" signs on the doors to the room where the Plaintiff was engaged in commercial sex acts;

    g.  Men ("Johns") frequently entered and left the rooms at the Inn of Naples where the Plaintiff was engaged in illegal commercial sex acts at all times of day and night;

    h.  Plaintiff's sex traffickers consistently refused housekeeping services and otherwise would prohibit staff from entering their rooms and the Plaintiff's rooms;

    i.  Plaintiff would frequently request clean towels and linens;

j.  Plaintiff dressed in a sexually explicit manner and would walk the hallways of the Inn of Naples Defendant;

k.  Excessively loud noises would consistently come from Plaintiff's rooms;

l.  During nighttime hours, Plaintiff and her "Johns" and drug clients would create noise in the public area of the Inn of Naples and, upon information and belief, would be a disturbance to other guests using the hotel for their intended purposes;

m.  Plaintiff would sleep during the day and the staff members of the Inn of Naples would consistently see the Plaintiff wearing lounge or sleep type clothing during the day; and

n.  While at the hotel, the Plaintiff displayed clear signs of physical abuse, diminished personal hygiene, submissiveness and inappropriate attire.

83.  In addition, each and every Inn of Naples Defendant knew or should have known that:

a.  Women, including Plaintiff, were walking around the Inn of Naples with cuts, lacerations, abrasions, bruises, injuries and bandages, including all over their faces;

b.  Women, including Plaintiff, were walking around the Inn of Naples strung out on drugs for days at a time;

c.  Women, including Plaintiff, at the Inn of Naples looked tired and haggard due to forced sex work at all hours of the day for many days at a time;

d.  Women, including Plaintiff, at the Inn of Naples were dressing inappropriately for the location and weather;

e.  The same women including Plaintiff, were walking in the lobby of the Inn of Naples 9-10 times a day with different men (would meet "Johns" at front door); and

f.  The Collier County Sheriff Office ("CCSO") would come to the hotel, knock on doors and tell girls and men to leave, and follow them to the next hotel.

84.  Each and every Inn of Naples Defendant knew or should have known of the dangerous conditions at the Inn of Naples that were likely to cause harm to the Plaintiff, in the following ways:

a.  The Inn of Naples was not properly designed for guest safety and proper monitoring by staff and surveillance systems;

    b.   The presence of suspicious people;

    c.   Random people coming in and out of certain room each night to have sex and buy drugs;

    d.   Rooms at the Inn of Naples were routinely filled with about 10 people who engaged in sex and drugs;

    e.   Loud, boisterous sounds and music in the rooms and public areas throughout the night and day disturbed the quiet enjoyment of other guests;

    f.   Women and clients would go into hotel parking lot and loiter;

    g.   Upon alert by other hotel customers and/or staff of the Inn of Naples, the CCSO received emergency calls that prostitution was occurring at the Inn of Naples in the rented rooms of the Plaintiff's sex traffickers and/or the Plaintiff;[4]

    h.   Emergency medical technicians from the City of Naples were frequently called to the Inn of Naples for drug overdoses and/or injuries occurring its hotel rooms that were rented to the Plaintiff's sex traffickers and/or the Plaintiff; and

    i.   Each and every Inn of Naples Defendant knew or should have known there was a foreseeable increased risk that illegal sex trafficking was occurring as the Inn of Naples, and that the Plaintiff might be harmed. Further that the scope of the anticipated risk to which each and every Inn of Naples Defendant allowed the Plaintiff to be exposed and the Plaintiff was within the zone of risks that were reasonably foreseeable by the Defendants.

85.    The foregoing routine and conduct occurred while Plaintiff C.S. was being sex trafficked at the  Inn of Naples from 2015 through early 2016 and, upon information and belief, the foregoing routine and conduct, as it applies to sex trafficking not specific to Plaintiff, also occurred many years prior to 2015.

---

[4] Upon information and belief, CCSO was present on each and every Inn of Naples Defendants' hotel premises on multiple occasions during the relevant time period.

86.     Naples Police were cognizant of the foregoing routine and conduct from afar, making it impossible for each and every Inn of Naples Defendant to be ignorant of what was occurring right in front of them.

87.     In fact, as early as the Fall of 2015, the Collier County Sherriff's Office ("CCSO") had established routine patrols to check local hotels (including the Inn of Naples) for human sex trafficking activities.

88.     While Plaintiff C.S. was being trafficked at the Inn of Naples, the CCSO reported to the Inn of Naples and made the sex trafficking known to each and every Inn of Naples Defendant.

89.     Each and every Inn of Naples Defendant, individually and/ or by their actual or apparent agents, servants and/or employees, knew or had constructive knowledge, that they were renting or otherwise providing rooms and services to individuals, such as human sex traffickers, who were engaged in the commercial sex trade.

90.     Each and every Inn of Naples Defendant, individually and/or by their actual or apparent agents, servants and/or employees, knew or had constructive knowledge, that the women with Plaintiff's sex traffickers, including Plaintiff C.S., were used to carry out the commercial sex trade and sale of illegal drugs.

91.     Each and every Inn of Naples Defendant, individually and/or by their actual or apparent agents, servants and/or employees, knew or should have known of suspicious activity occurring at the  Inn of Naples and that by failing to inspect and make their hotel premises safe from criminal activity, it was foreseeable that illegal activity was, and would continue to be, carried out at the Inn of Naples.

92.     It follows then that each and every Inn of Naples Defendant could reasonably foresee that sex crimes, human trafficking or other foreseeable acts were occurring on their premises and/or were being committed against hotel guests, such as the Plaintiff  C.S.

93.     Additionally, each and every Inn of Naples Defendant, individually and/or by their actual or apparent agents, servants and/or employees, knew or had constructive knowledge that the sale and usage of illegal drugs were being performed on the premises.

94.     Moreover, each and every Inn of Naples Defendant's hotel housekeeping, front desk, maintenance, food preparation staff, managers, and pool staff had conversations with the Plaintiff C.S., and had knowledge, or should have had knowledge, that the Plaintiff was staying at the hotel for an extended period of time to carry out various sex trafficking ventures.

95.     Each and every Inn of Naples Defendant's hotel staff also knew that the Plaintiff would routinely sleep during the day and walk the premises at night in provocative attire.

96.     At all material times, each and every Inn of Naples Defendant, individually and/or by and through their actual or apparent agents, servants and/or employees, was uniquely positioned to observe the manifestations or indications of human sex trafficking and human sex trafficking victims within the Inn of Naples.

97.     Had the Inn of Naples staff been properly trained by the Inn of Naples Defendants and/or anyone acting on their behalf regarding the obvious signs of sex trafficking, they would have observed the obvious signs of sex trafficking at the Inn of Naples, including as they applied to Plaintiff C.S., and these signs would have been recognized and, therefore, reported.

98.     The Inn of Naples Defendants are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the Inn of Naples where the Plaintiff C.S. was trafficked for sex. The Inn of Naples Defendants each share the common policies and practices complained of herein.

99.     The Inn of Naples Defendants jointly employ or ratify the employment of individuals through horizontal joint employment and/or vertical joint employment.

100.    As an integrated enterprise and or joint employer, the Inn of Naples Defendants are separately and jointly responsible for compliance with all applicable laws.

101.    As an integrated enterprise and or joint employer, the Inn of Naples Defendants are jointly and severally liable for any damages caused by their employees.

102.    The Inn of Naples Defendants failed to implement and enforce any of their own policy or policies and protect Plaintiff C.S. from being sex trafficked.

103.    The Inn of Naples Defendants knew or should have known that the Inn of Naples where Plaintiff C.S. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the Inn of Naples premises, including when Plaintiff C.S. was trafficked.

104.    Despite having clear evidence of the extensive prostitution and sex trafficking that occurs at the Inn of Naples, the Inn of Naples Defendants repeatedly failed to stop these actions.

105.    The Inn of Naples Defendants could have prevented sex trafficking, by: (i) distributing information to assist their agents, employees, operators, and brand managers in identifying human trafficking and indications of an illegal enterprise or suspicious activity; (ii) posting notices on what is human trafficking and a national hotline; (iii) providing a process for reporting and escalating human trafficking concerns within the organization, and to appropriate outside agencies; (iv) requiring all employees to attend training related to handling a situation involving human trafficking; (v) providing new hire orientation on human rights, corporate responsibility and whistleblowing of enablers; (vi) providing training and education to their hotels through webinars, seminars, conferences, and online portals on how to respond to suspected human traffickers, victims and suspicious activity; (vii) developing and holding ongoing training sessions on human trafficking; or providing checklists, escalation protocols and information to property management

staff; or tracking performance indicators and key metrics on human trafficking prevention; (viii) providing steps they can take to deter traffickers and decline forms of bribery;  and (ix) ensuring strict security protocols, credit cards only, and no loitering.

106.    For years, the Inn of Naples Defendants have failed to take adequate steps to prevent the rampant culture of sex trafficking which tragically occurs on their properties, including the Inn of Naples at which Plaintiff C.S. was trafficked.

107.    The acts and omissions of the Inn of Naples Defendants served to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff C.S., and others, for commercial sexual exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking.

### The Inn of Naples Defendants Knowingly Benefitted From Plaintiff C.S.'s  Sex Trafficking

108.    At all material times, each and every Inn of Naples Defendant received money and financially profited from the forced commercial sex acts that were being carried out by the Plaintiff C.S. on the premises of the Inn of Naples.

109.    Each and every Inn of Naples Defendant knew or should have known that they were financially profiting from the continuation of illegal commercial sex acts committed on the premises of the Inn of Naples through both renting of rooms and provision of the Plaintiff's forced commercial sex services.

110.    Despite knowledge, constructive knowledge and general awareness of the signs of human trafficking, each and every Inn of Naples Defendant, individually and/or by and through their actual or apparent agents, servants and/or employees, failed to report to authorities, intervene, disrupt, refuse or otherwise stop the human sex trafficking of the Plaintiff C.S.

111.    By harboring the Plaintiff C.S.'s sex traffickers and the Plaintiff's commercial sex and drug acts at the Inn of Naples, each and every Inn of Naples Defendant, individually and/or by and through their actual or apparent agents, servants and/or employees, continued to financially profit from the room occupancy derived from not reporting and not refusing the human sex trafficking of the Plaintiff.

112.    Accordingly, each and every Defendant continued to financially profit from the room occupancy derived from not protecting their hotel guests, to wit the Plaintiff C.S., from being a continuous victim of human sex trafficking.

**Defendants' Willful Blindness to Sex Trafficking at their Hotels**

113.    Each and every Inn of Naples Defendant has been on constructive or actual notice[5] of repeated incidences of sex trafficking occurring at the Inn of Naples, yet each and every Inn of Naples Defendant failed to take the necessary action to prevent sex trafficking and still persist in failing to take the necessary action to prevent sex trafficking at the Inn of Naples.

114.    Plaintiff C.S. was a hotel guest at  the Inn of Naples and Plaintiff was seriously and permanently injured as a direct result of each and every Inn of Naples Defendants' acts and omissions, in that each and every Inn of Naples Defendant permitted, harbored and facilitated illegal sex trafficking ventures to take place at the Inn of Naples whereby the Plaintiff C.S. was routinely and continuously abused, battered, falsely imprisoned, raped, beaten, starved, forcibly injected with drugs and enslaved.

115.    More specifically, at all material times, in the quest for profits, the acts and omissions of each and every Inn of Naples Defendant regarding the Inn of Naples caused the Plaintiff to suffer:

      a.   Forced labor;

---

[5] By virtue of membership in AAOHO or ALHA, incidents on the premises, observations and evidence on the premises,  incidents at nearby properties, news reports, industry reports, customer reviews or otherwise.

    b.   Forced confinement without safe means of escape;

    c.   Assault and fear;

    d.   Sickness, dizziness and headaches;

    e.   Cuts, lacerations, abrasions and other physical harm;

    f.   Mental anguish, humiliation, exploitation, degradation and mental distress;

    g.   Suffocation, battery and rape;

    h.   Shock, fright and post-traumatic stress;

    i.   Overdose and drug-induced dangers (the Plaintiff suffered drug overdoses, drug-induced actions which caused harm to themselves, physical deformities and scarfing from actions of the "Johns" and drug usage); and

    j.   Invasion of privacy and wrongful entry of "Johns."

## CAUSES OF ACTION

116.   The injuries and harms that Plaintiff C.S. suffered as a result of each and every Inn of Naples Defendant's negligent operation of the Inn of Naples and failure to make the hotel premises safe, are of a permanent and/or continuing nature.

117.   Each and every Inn of Naples Defendant, as hotel owners, operators, supervisors and controllers, had a continuing legal duty to protect their hotel guests and other invitees, like the Plaintiff C.S., to use ordinary care to keep their hotel premises in a reasonably safe condition, and to protect their guests, such as the Plaintiff C.S., from harm due to reasonably foreseeable risks of injury, regardless if the guests were utilizing the hotels' common rooms, facilities, exterior passageways, or were within the confines of the rented rooms.[6]

---

[6] 17 Fla. Jur., Hotels, Restaurants, and Motels, § 24; 40 Am.Jur.2d, Hotels, Motels, and Restaurants, § 111.

118.    Each and every Inn of Naples Defendant failed in their duties to the Plaintiff C.S. to provide security and other precautions to prevent the criminal acts upon her by third parties on a regular basis.

119.    The attacks upon the Plaintiff C.S. by her traffickers, by the "Johns" and staff persons were foreseeable and thus arose a duty by each and every Inn of Naples Defendant to protect the Plaintiff.

120.    Each and every Inn of Naples Defendant observed, knew or should have known there was a foreseeable increased risk that illegal sex and drug trafficking was occurring at the Inn of Naples and that the Plaintiff C.S. might be harmed during the rental of the rooms the Inn of Naples.

121.    To each and every Inn of Naples Defendant, as hotel owners, operators, supervisors and controllers, the crime of human sex trafficking was a foreseeable risk because the long history, prevalence and extent of this sex slavery was commonly known to them.

122.    At all relevant times, each and every Inn of Naples Defendant, as hotel owners, operators, supervisors and controllers, were vehicles with which the crime of human sex trafficking was readily carried out, furthered, harbored and made financially viable.

123.    Significantly, each and every Inn of Naples Defendant knew or should have known there was a foreseeable increased risk that illegal sex trafficking was occurring at the Inn of Naples, that tragic incidents were occurring as a result, and that the Plaintiff C.S., as a hotel guest, might be harmed due to prior similar incidents at the Inn of Naples

124.    Accordingly, each and every Inn of Naples Defendant should have taken steps to prevent sex and drug trafficking at the Inn of Naples in accordance with applicable Federal, State and local laws and guidelines.

125.    Accordingly, because human sex trafficking and other illegal activity associated therewith was foreseeable, each and every Inn of Naples Defendant had a duty to take adequate security or remedial measures to protect their guests from criminal activity, to wit, the Plaintiff C.S.

126.    Plaintiff C.S.'s injuries and consequential damages were the direct and proximate result of the Inn of Naples Defendants' acts and omissions, namely:

     a.    Failure to provide training regarding human trafficking awareness to employees who perform housekeeping duties, maintenance, or who work at the front desk;

     b.    Failure to provide guidance on how to identify individuals who may be traffickers or their victims of the sex trafficking;

     c.    Failure to establish, implement or enforce a protocol on reporting suspected human trafficking;

     d.    Failure to establish, implement or enforce a protocol to respond to situations involving human trafficking;

     e.    Failure to enforce provisions within employee manuals or handbook on how to handle general emergency situations or manage criminal risks;

     f.    Failure to require their agents, servants and/or employees to participate, complete and continue education regarding sex trafficking in hotels;

     g.    Failure to remove and/or refuse subsequent accommodations to the Plaintiff's sex traffickers when conduct displayed on the premises included a combination of intoxication, profanity, lewdness, or brawling; disturbing the peace or comfort of other guests; illegal activity; disorderly conduct; and drug dealing;

     h.    Allowing rental of hotel rooms without conferring with senior management notwithstanding the suspicions;

     i.    Failure to correct or remedy protocols that were defective or ineffective in preventing or handling prior sex and drug trafficking incidents at Defendant's hotel property;

     j.    Failure to provide adequate security personnel at the Inn of Naples to protect their guests;

k. Failure to establish, implement and enforce appropriate security policies and procedures for certain times of day, room locations, and suspicious activity;

l. Permitting unknown persons to loiter, to gain entry to guest hallways, to know room numbers, and have access to room keys;

m. Failure to check the background of the hotel employees for sex crimes and other unlawful acts; and

n. Otherwise failing to use reasonable care for the safety of their guests.

127.   By failing to act, each and every Inn of Naples Defendant, by and through their actual or apparent agents, servants and/or employees, allowed the Plaintiff C.S. to be harbored and confined for sexual acts while collecting rental fees thereon.

128.   The Inn of Naples Defendant's willful blindness, negligence, or indifference for the health and welfare of the Plaintiff C.S. spanned over many months and exceeded all bounds of decency.

129.   Pursuant to Florida's statute 501.204, each and every Inn of Naples Defendant has engaged in unconscionable and unfair acts or practices in the conduct of the hospitality industry.

130.   As a further direct and proximate result of each and every Inn of Naples Defendant's conduct and lack of due and reasonable care, the Plaintiff C.S. had incurred expenses, fees, and costs of medical care and attention to her injuries, including: (1) physicians' fees; (2) medications and medical supplies; (3) hospitalizations; and (4) transportation costs to and from various physicians' offices and hospitals.

131.   As a further direct and proximate result of each and every Inn of Naples Defendants' conduct and lack of due and reasonable care, the Plaintiff C.S. has suffered great physical and mental pain, and will continue to suffer such pain for the indefinite future, for which the Plaintiff should also be compensated by each and every Inn of Naples Defendant.

## COUNT I
## <u>VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")</u>

132.    Plaintiff C.S. sets forth an action for violation of 18 U.S.C § 1595 as against each and every Inn of Naples Defendant named herein.

133.    In support of her action against Defendant INN OF NAPLES HOTEL, LLC, Plaintiff C.S. adopts and incorporates by reference paragraphs  1-131 contained in this Complaint as if fully set forth herein.

134.    In support of her action against Defendant INN OF NAPLES, LLC, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-131 contained in this Complaint as if fully set forth herein.

135.    At to Plaintiff C.S.'s TVPRA action as against each and every Inn of Naples Defendant named herein, Plaintiff  C.S. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591 and is therefore entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity who knowingly benefits, financially or by receiving anything of value from participation in a venture which that entity or person knew or should have known has engaged in violations of the TVPRA.

136.    Each and every Inn of Naples Defendant named herein knowingly benefited from the sex trafficking of Plaintiff C.S. by receiving payment for the rooms rented for Plaintiff C.S. and her traffickers at the Inn of Naples.  In addition, each and every Inn of Naples Defendant received other financial benefits in the form of food and beverage sales and ATM fees from those persons who were engaging in sex trafficking.

137.    Each and every Inn of Naples Defendant knew or should have known about the nature of the sex trafficking venture at the Inn of Naples, including as they related to Plaintiff C.S., for the reasons stated above which include, but are not limited to:

   a.   Cash payments for the rooms by the sex traffickers;

   b.   Refusal of housekeeping services by those persons engaged in sex trafficking;

   c.   Excessive used condoms located in the rooms used for sex trafficking;

   d.   Excessive requests for towels and linens in the rooms used for sex trafficking;

   e.   Hotel staff observing Plaintiff C.S. and her traffickers in the hotel;

   f.   Plaintiff C.S. being escorted by traffickers in and around the hotel;

   g.   Pleas and screams from help coming from the rooms of Plaintiff C.S.;

   h.   Operation of sex trafficking ventures out of the same hotel room for multiple days or weeks in succession;

   i.   Multiple men per day coming and going from the same rooms without luggage or personal possessions; and

   j.   Knowledge of police and EMS activity at the Inn of Naples and at other locations near the Inn of Naples that was related to commercial sex work.

138.   Each and every Inn of Naples Defendant was participating in a venture under 18 U.S.C. § 1595(a) by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff  C.S. for commercial sexual exploitation by repeatedly renting rooms at Inn of Naples to people each and every Inn of Naples Defendant knew or should have known were engaged in sex trafficking.

139.   For the reasons set forth herein, Plaintiff C.S. suffered and will continue to suffer substantial economic, physical, and psychological injuries as the result of being trafficked and sexually exploited at the Inn of Naples in violation of 18 U.S.C. §1591.

### COUNT II
### Violation of Fla. Stat. § 772.104

140.   Plaintiff C.S. brings this claim against each and every Inn of Naples Defendant under Fla. Stat. § 772.104(1) and § 772.104(2).

141.    In support of her action against Defendant INN OF NAPLES HOTEL, LLC, Plaintiff C.S. adopts and incorporates by reference paragraphs  1-131 contained in this Complaint as if fully set forth herein.

142.    In support of her action against Defendant INN OF NAPLES, LLC, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-131 contained in this Complaint as if fully set forth herein.

143.    The Inn of Naples Defendants are associated with each other and/or the Plaintiff C.S.'s sex traffickers for the common purpose of profiting off an established sex trafficking scheme.  This association-in-fact is therefore an Enterprise within the meaning of Fla. Stat. § 772.102(3).

144.    Each and every Inn of Naples Defendant conducted or participated in, or conspired to conduct or participate in, the affairs of the RICO Enterprise through a pattern of numerous acts of racketeering activity defined under Fla. Stat. § 772.102(1)(a)(15) and in violation of Fla. Stat. § 772.103, related by their common purpose to profit off an institutionalized sex trafficking scheme.

145.    Specifically, each and every Inn of Naples Defendant conducted or participated in, and/or conspired to conduct or participate in, the affairs of the RICO Enterprise by knowingly, or with reckless disregard, maintaining sex trafficking as defined by Fla. Stat. § 787.06(2)(f).

146.    As described in the preceding paragraphs, each and every Inn of Naples Defendant, regarding the RICO Enterprise, maintained sex trafficking by knowingly, or with reckless disregard, repeatedly allowing sex trafficking to occur on their premises between 2015 and 2016.

147.    In exchange for maintaining the sex trafficking scheme, each and every Inn of Naples Defendant, regarding the RICO Enterprise, received a financial benefit in violation of Fla. Stat. § 787.06(3), namely, repeated payments for rooms used for sex trafficking.

148.   These predicate acts of racketeering activity described above constitute a "pattern of racketeering activity" as defined in Fla. Stat. § 772.102(4) and furthered the common purpose of each and every Inn of Naples Defendant's RICO Enterprise to profit from a sex trafficking scheme.

149.   Each and every Inn of Naples Defendant's acts have yielded consistent results and caused economic, physical, and psychological injuries to the Plaintiff C.S.

150.   As set forth in the preceding paragraphs, the racketeering acts have similar participants.

151.   Each and every Inn of Naples Defendant is a hospitality company that provides lodging at the Inn of Naples.

152.   Each and every Inn of Naples Defendant, regarding the RICO Enterprise, directed their racketeering activities at a common victim, Plaintiff C.S.

153.   The acts of each and every Inn of Naples Defendant have similar methods of commission, such as maintaining their deficiencies in implementing and enforcing policies and protocols regarding sex trafficking at the Inn of Naples in order to maximize their profits.

154.   As a direct and proximate result of each and every Inn of Naples Defendant's acts discussed in this section, Plaintiff C.S. has suffered bodily injuries that are of a continuing or permanent nature, resulting in pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All of the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future.

## COUNT III
### Premise Liability

155.   Plaintiff C.S. brings this claim against each and every Inn of Naples Defendant for premise liability.

156.    In support of her action against Defendant INN OF NAPLES HOTEL, LLC, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-131 contained in this Complaint as if fully set forth herein.

157.    In support of her action against Defendant INN OF NAPLES, LLC, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-131 contained in this Complaint as if fully set forth herein.

158.    At all times material to this complaint, the Plaintiff C.S., while an invitee or otherwise lawfully present upon the premises of the Inn of Naples, did sustain injuries as a result of each and every Inn of Naples Defendant, their patrons and the criminal activity carried on at the Inn of Naples.

159.    Each and every Inn of Naples Defendant, individually and by and through their agents, servants and/or employees, owed a duty to maintain the premises of the Inn of Naples, that they owned, operated, controlled, supervised and/or for which they were otherwise responsible, in a reasonably safe condition and free from conditions that would render it dangerous and unsafe for the Plaintiff C.S.

160.    Each and every Inn of Naples Defendant, individually and/or by and through their agents, servants and/or employees, owed a duty to exercise reasonable care to protect the Plaintiff C.S., by inspection or other affirmative acts, from the danger of any reasonably foreseeable harm occurring from the reasonably foreseeable use of the premises of the Inn of Naples that they owned, operated, controlled, supervised and/or for which they were otherwise responsible by sex traffickers.

161.    Each and every Inn of Naples Defendant, individually and/or by and through their agents, servants and/or employees, owed a duty to exercise reasonable care to keep the hotel guests of the

Inn of Naples, including Plaintiff C.S., safe by implementing and enforcing security measures and proper protocols.

162.   Each and every Inn of Naples Defendant, individually and/or by and through their agents, servants and/or employees, owed a duty to safeguard the Plaintiff C.S. against criminal conduct that each and every Inn of Naples Defendant could reasonably foresee happening at the Inn of Naples.

163.   Each and every Inn of Naples Defendant, individually and/or by and through their agents, servants and/or employees, owed a duty to maintain the Inn of Naples in a hospitable, safe and reasonable manner, as well those areas beyond the hotel's property lines for which each and every Inn of Naples Defendant had possession, custody or control thereof.

164.   Each and every Inn of Naples Defendant had actual or constructive knowledge of prior similar sex trafficking incidents carried out at hotel properties they owned, operated, supervised, controlled and/or were otherwise responsible, including the Inn of Naples, as well as other hotel properties in Naples, Florida.

165.   Each and every Inn of Naples Defendant knew or should have known, in light of all the attendant circumstances stated herein, that the risk of such criminal conduct taking place at the Inn of Naples would be unreasonably high without each and every Inn of Naples Defendant taking appropriate  security precautions against such conduct as well as protocols for reporting and refusing such conduct.

166.   Each and every Inn of Naples Defendant, individually and/or by and through their agents, servants and/or employees, had actual knowledge of the dangerous condition the Plaintiff C.S. was in at the Inn of Naples, or in the alternative, that the dangerous condition existed for a sufficient length of time at the Inn of Naples such that each and every Inn of Naples Defendant, in the exercise of ordinary care, should have known of the conditions, thereby giving each and every Inn

of Naples Defendant constructive knowledge of the Plaintiff C.S.'s peril; and/or that the condition occurred with regularity at the Inn of Naples and was therefore foreseeable; and/or each and every Inn of Naples Defendant should have known of the dangerous condition or peril by conducting proper and reasonable inspection of the hotel premises and/or guests' conduct.

167.    Because human sex trafficking and associated conduct was foreseeable, each and every Inn of Naples Defendant had a duty to take adequate measures at the Inn of Naples to protect their guests, including the Plaintiff C.S., from being victims of continued sex trafficking.

168.    At all times material, each and every Inn of Naples Defendant, by and through their agents, servants and/or employees, created and/or allowed the dangerous condition to exist at the Inn of Naples and/or failed to keep the Plaintiff C.S. safe while she was on the premises of the Inn of Naples.

169.    Each and every Inn of Naples Defendant could have taken any number of corrective measures to make the dangerous conditions at the Inn of Naples cease, including but not limited to, not accepting payments, not allowing "Johns" to enter the Inn of Naples, not allowing  sex traffickers to enter the Inn of Naples, providing training regarding human trafficking awareness to employees who perform housekeeping duties, maintenance, or who work at the front desk; providing guidance on how to identify individuals who may be traffickers or their victims of the sex trafficking; establishing, implementing or enforcing protocols on reporting suspected human trafficking and responding to situations involving human trafficking; and enforcing provisions within employee manuals or handbook on how to handle general emergency situations or manage criminal risks.

170.    In failing to take any measures to report and remove the dangerous condition from the premises of  the Inn of Naples, each and every Inn of Naples Defendant failed to take reasonable care to protect the Plaintiff C.S., their hotel guest.

171.    Furthermore, by leaving the Inn of Naples open and unattended, each and every Inn of Naples Defendant encouraged the use of the hotel premises by loiterers, pimps, criminals, rapists and drug dealers to run their own criminal venture, prostitute, batter, falsely imprison, overdose, enslave, and gravely injure women, such as Plaintiff C.S., who – because of their fear, mental state, financial restraints and physical injuries from the forced sex occurring in the Inn of Naples hotel rooms – were unable to rescue themselves. Accordingly, each and every Inn of Naples Defendant's failure to act effectively enabled their hotel room(s) to confine and/or imprison the Plaintiff C.S. without any safe means of escape from the "Johns" and/or "pimps".

172.    Each and every Inn of Naples Defendant, by and through their agents, servants and/or employees, breached their respective duties owed to the Plaintiff C.S., and were negligent regarding the Inn of Naples by:

     a.   Creating a dangerous condition;

     b.   Failing to correct the aforementioned dangerous condition;

     c.   Failing to report and refuse renting to the traffickers;

     d.   Failing to properly and adequately maintain the premises in a reasonably safe condition;

     e.   Failing to monitor and prevent their staff and agents from conducting and engaging in illegal sex and drug trafficking;

     f.   Failing to have security measures to protect the Plaintiff;

     g.   Failing to provide training regarding human trafficking awareness to employees who perform housekeeping duties, maintenance, or who work at the front desk;

     h.   Failing to provide guidance to employees on how to identify individuals who may be traffickers or their victims of the sex trafficking;

     i.   Failing to establish, implement or enforce protocols on reporting suspected human trafficking and responding to situations involving human trafficking;

j.   Failing to enforce provisions within employee manuals or handbook on how to handle general emergency situations or manage criminal risks; and

k.   Failing to take affirmative steps to investigate suspicious conduct and forbid criminal conduct.

173.   As a direct and proximate result of the acts and omissions of each and every Inn of Naples Defendant by and through their agents, servants and/or employees – which led to the continuous dangerous condition at the Inn of Naples during  the time period within which Plaintiff C.S. was trafficked  there (approximately 2015 through approximately February 2016) – Plaintiff C.S. has suffered bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All of the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future.

**COUNT IV**
**Negligent Hiring, Supervision and Retention**

174.   Plaintiff C.S. brings this claim against each and every Inn of Naples Defendant for negligent hiring, supervision and retention.

175.   In support of her action against Defendant INN OF NAPLES HOTEL, LLC, Plaintiff C.S. adopts and incorporates by reference paragraphs  1-131 contained in this Complaint as if fully set forth herein.

176.   In support of her action against Defendant INN OF NAPLES, LLC, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-131 contained in this Complaint as if fully set forth herein.

177.   Each and every Inn of Naples Defendant, through their respective agents, employees, and/or servants, negligently authorized criminals to rent rooms for prostitution and drug

dealing at the Inn of Naples, creating a foreseeable risk that the Plaintiff C.S. would be sold, used, abused, drugged, beaten and forced to engage in conduct for fear of her life.

178.    Each and every Inn of Naples Defendant, through their respective agents, employees, and/or servants, failed to either identify and/or report the human sex trafficking and foreseeable harm of the Plaintiff.

179.    Each and every Inn of Naples Defendant, through their respective agents, employees, and/or servants, failed to refuse continued lodging services to human sex traffickers.

180.    Each and every Inn of Naples Defendant was in control of the hiring of agents, employees, and/or servants at the Inn of Naples that they owned, operated, supervised, controlled and/or or were otherwise responsible, and was responsible for performing background checks on these agents, employees and/or servants; instructing, training and supervising said agents, employees, and/or servants; and deciding whether to terminate said agents, employees and/or servants.

181.    Each and every Inn of Naples Defendant had a duty to make an appropriate investigation of their agents, employees, and/or servants.

182.    Each and every Inn of Naples Defendant was in control of the supervising of the agents, employees, and/or servants at the hotels that they owned, operated, supervised, controlled and/or or were otherwise responsible, and was responsible for instructing, training and supervising said agents, employees, and/or servants.

183.    Each and every Inn of Naples Defendant knew or should have known that their agents, employees, and/or servants were allowing criminals to rent rooms for prostitution and drug dealing.

184.   Each and every Inn of Naples Defendant knew or should have known that their agents, employees, and/or servants were failing to either identify and/or report the human sex trafficking and foreseeable harm of the Plaintiff and others.

185.   Each and every Inn of Naples Defendant knew or should have known that their agents, employees, and/or servants were failing to refuse continued lodging services to human sex traffickers.

186.   At all material times, each and every Inn of Naples Defendant was negligent in their hiring, employment, supervision and termination decisions regarding their agents, employees, and/or servants, and said negligent decisions caused the Plaintiff C.S. to be injured.

187.   It was foreseeable that each and every Inn of Naples Defendants' acts and omissions increased the risk that these illegal acts would regularly occur on the premises of the Inn of Naples and would cause harm to the Plaintiff C.S.

188.   But for the negligence and omissions of each and every Inn of Naples Defendant as to the Inn of Naples, the criminal conduct, including human sex trafficking, on the foregoing dates could have been prevented and/or stopped.

189.   Accordingly, each and every Inn of Naples Defendants is liable for all harmful results that are the normal incidents of, and within the increased risk caused by, their negligent acts and omissions regarding the Inn of Naples.

190.   As a direct and proximate result of the acts and omissions of the Defendants, by and through their agents, servants and/or employees – which led to the continuous sex trafficking of Plaintiff C.S. from approximately 2015 through approximately February of 2016 – Plaintiff C.S. has suffered bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical

treatment. All the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future

## COUNT V
## Negligent Rescue

191.    Plaintiff C.S. brings this claim against each and every Inn of Naples Defendant for negligent rescue.

192.    In support of her action against Defendant INN OF NAPLES HOTEL, LLC, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-131 contained in this Complaint as if fully set forth herein.

193.    In support of her action against Defendant INN OF NAPLES, LLC, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-131 contained in this Complaint as if fully set forth herein.

194.    At all times material to this litigation, the Inn of Naples Defendants were the owners and operators of the Inn of Naples and they ran a profit business of renting out rooms on their premises.

195.    At all times material to this litigation, the Inn of Naples Defendants knew or should have known that suspicious activity, illegal transactions, abuse, crimes, drugs and sex slavery were a regular occurrence at the Inn of Naples and were being conducted by a regular group of individuals.

196.    At all times material to this litigation, the Inn of Naples Defendants knew or should have known that this type of environment posed a danger at the Inn of Naples.

197.    At all times material to this litigation, the Inn of Naples Defendants had a duty to keep their hotel guests, including Plaintiff C.S., and their hotel premises safe and prevent foreseeable criminal activity.

198.    At all times material to this litigation, the Inn of Naples Defendants had a duty to take appropriate actions that would properly inform themselves and make the appropriate repairs to make the Inn of Naples safe, or otherwise frustrate criminal activity.

199.    By failing to act and prevent suspicious behavior, the Inn of Naples Defendants caused dangerous conditions to occur, exist and continue on their premises at all relevant times in this complaint.

200.    The Inn of Naples Defendants knew or should have known that an illegal sex trafficking venture and drug conduct was occurring at the Inn of Naples but took no appropriate actions to properly investigate, report, cease or prevent the illegal conduct, nor to safeguard their hotel guests and/or to rescue the Plaintiff C.S. from the peril they caused by renting rooms at the Inn of Naples for extended stays to human sex traffickers.

201.    During all relevant times, the Inn of Naples Defendants financially benefitted from the sexual trafficking rental money received from the Inn of Naples, where the Plaintiff C.S. was held as a sex slave, and the consistent occupancy. By failing to prevent or correct the dangerous conditions on the premises of the Inn of Naples, each and every Inn of Naples Defendants allowed the "Johns" continuing demand for the Plaintiff C.S.'s services to always be met.

202.    As a result of the authorization, facilitation, access, financial benefits and concealment of the sex trafficking and drug use by the Inn of Naples Defendants on the  premises of the Inn of Naples, the Plaintiff C.S. was  placed in peril.

203.    The Inn of Naples Defendants had a duty to make safe a dangerous condition at the Inn of Naples and to rescue their hotel guests, specifically Plaintiff C.S., from the peril they created, as well as to protect and rescue their hotel guests, specifically Plaintiff C.S., from foreseeable criminal activity.

204.   The Inn of Naples Defendants had a duty to act as reasonably prudent person under emergency circumstances to rescue the Plaintiff C.S. when they observed her on their hotel premises being sex trafficked, strung out, stumbling onto the adjacent highway, overdosed, injured and/or beaten.

205.   The Inn of Naples Defendants failed to protect and failed to rescue the Plaintiff C.S. despite their legal duty to rescue her as a result of the hotel-guest relationship and because they placed the Plaintiff C.S. in the peril of continued and extended forced sex services.

206.   The Inn of Naples Defendants failed to act as reasonably prudent hotel owners and operators, especially in light of the prior incidents and known issues at their hotel and in the Naples community.

207.   Plaintiff C.S. suffered physical, mental, emotional and economic damages as the result of the actions and inactions of the Inn of Naples Defendants.

208.   As a direct and proximate result of the acts and omissions of the Inn of Naples Defendants, individually and/or by and through their agents, servants and/or employees – which led to the continuous sex trafficking of Plaintiff C.S. on the premises of the Inn of Naples from approximately 2015 through approximately February of 2016 – Plaintiff C.S. has suffered bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future.

## COUNT VI
## Aiding and Abetting, Harboring, Confining, Coercion and Criminal Enterprise

209.    Plaintiff C.S. brings this claim against each and every Inn of Naples Defendant for aiding and abetting unlawful activity including unlawful confinement, imprisonment, assault and battery by her sex traffickers and "Johns."

210.    In support of her action against Defendant INN OF NAPLES HOTEL, LLC, Plaintiff C.S. adopts and incorporates by reference paragraphs  1-131 contained in this Complaint as if fully set forth herein.

211.    In support of her action against Defendant INN OF NAPLES, LLC, Plaintiff C.S. adopts and incorporates by reference paragraphs 1-131 contained in this Complaint as if fully set forth herein.

212.    The affirmative acts of the Inn of Naples Defendants in renting hotel rooms at the Inn of Naples for extended amounts of time to the Plaintiff's sex traffickers for sex trafficking, and failing to report illegal conduct to the authorities caused the Plaintiff C.S. to be routinely confined to and imprisoned in the hotel rooms and their premises.

213.    The affirmative acts of the Inn of Naples Defendants in renting hotel rooms at the Inn of Naples for extended amounts of time to the Plaintiff's sex traffickers for sex trafficking, and failing to report illegal conduct to the authorities caused the Plaintiff C.S. to suffer assault and battery at the hands of her sex traffickers and "Johns."

214.    The Inn of Naples Defendants desired Plaintiff's continuous occupancy of the hotel rooms at the Inn of Naples, and that of her sex traffickers and "Johns," because it generated revenue, even if said occupancy was related to suspicious or criminal activity.

215.    The Inn of Naples Defendants had knowledge, actual or constructive, that sexual trafficking victims, including the Plaintiff C.S., were being confined and imprisoned and that

they had no reasonable means of escape due to physical barricades of the Plaintiff's sex traffickers in the hallways, forced drug use and/or physical restraints.

216.    The Inn of Naples Defendants had actual and/or constructive knowledge the Plaintiff C.S. was being assaulted and battered at the hands of her sex traffickers and "Johns."

217.    The Inn of Naples Defendants had knowledge, actual or constructive, that Plaintiff did not leave her rooms at the Inn of Naples for extended periods of times, nor allow maintenance to come into her hotel rooms.

218.    The Inn of Naples Defendants substantial assistance to Plaintiff's sex traffickers and "Johns" in carrying out her imprisonment, confinement, assaults and batteries at the Inn of Naples by allowing them to continuously use rooms there for sex trafficking, allowing "Johns" to find and visit the Plaintiff in her rooms at the Inn of Naples, and turning a blind eye to the unlawful conduct taking place so that they could obtain revenue from the renting of the rooms at the Inn of Naples.

219.    The knowledge of the Inn of Naples Defendants, along with their respective actions and inactions, allowed traffickers and "Johns" to make the Plaintiff C.S. their sex slaves.

220.    The Inn of Naples Defendants facilitated or assisted the criminal enterprise by either willful blindness, gross negligence, and/or indifference.

221.    Accordingly, the Inn of Naples Defendants are liable for all foreseeable damages that arose from the Plaintiff C.S.'s confinement, imprisonment, drug use, assault and battery that continually took place at the Inn of Naples.

222.    As a direct and proximate result of the acts and omissions of the Inn of Naples Defendants individually and/or by and through their respective agents, servants and/or employees – which led to the continuous sex trafficking of  Plaintiff C.S. at the Inn of Naples from approximately 2015 through approximately February of 2016 – Plaintiff C.S. has suffered

bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future.

223.     Due to all of the above allegations against each and every Inn of Naples Defendant regarding Plaintiff's unlawful sex trafficking at the Inn of Naples, Plaintiff pleads allowance to recover damages, court costs and reasonable attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff C.S. demands judgment against each and every Inn of Naples Defendant as identified in each of the above-referenced claims and Counts and as follows:

1.      Awarding compensatory damages to the Plaintiff for past and future damages for the described losses with respect to each count, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2.      For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case will be transferred for trial;

3.      Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish the Defendants and deter future similar conduct;

4.      Awarding the Plaintiff reasonable attorney's fees;

5.      Awarding the Plaintiff the costs of these proceedings; and

6.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff C.S. hereby demands a trial by jury.

Dated: August 19, 2020

<div style="margin-left: 40%;">

s/ *Sharon M Hanlon*

Sharon M Hanlon, Esq
FL Bar Number: 946620
**Law Office of Sharon M. Hanlon, PA**
5633 Naples Boulevard
Naples, Florida 34109
Telephone: (239) 598-3222
shanlon@zelmanandhanlon.com
gcohen@zelmanandhanlon.com

s/ *Yale T Freeman*

Yale T. Freeman, Esq
FL Bar Number: 161855
**Yale T. Freeman, PA**
999 Vanderbilt Beach Road, Suite 200
Naples, FL  34108
Telephone: (239) 530-2500
ytfreeman@ytfreemanlaw.com

s/ *Brian J. Perkins*

Brian J. Perkins, Esq.
*To be Admitted Pro Hac Vice*
Virginia E. Anello, Esq.
*To be Admitted Pro Hac Vice*
Diana Yastrovskaya, Esq.
*To be Admitted Pro Hac Vice*
**Douglas and London, P.C.**
Attorney for Plaintiff
59 Maiden Lane, 6th Floor
New York, NY 10038
Telephone: (212) 566-7500
Fax: (212) 566-7501
bperkins@douglasandlondon.com
vanello@douglasandlondon.com
dyastrovskaya@douglasandlondon.com

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which I will send a notice of electronic filing to all counsel of record.

s/ ***Sharon M Hanlon***_____
Sharon M Hanlon, Esq

47